UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WENDY KAMEL, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) No. 1:22:cv-01115-JMS-MPB |
| | ) |
| ANDERSON POST ACUTE, LLC | ) |
| d/b/a PROVIDENCE ANDERSON, | ) |
| | ) |
| *Defendant*. | ) |

**ORDER**

Plaintiff Wendy Kamel was employed by defendant Anderson Post Acute, LLC ("Anderson") at its skilled nursing facility called Providence Anderson. She alleges that Anderson terminated her employment in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). Anderson has filed a Motion to Dismiss, [Filing No. 11], which is now ripe for the Court's consideration.

**I.
STANDARD OF REVIEW**

Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). The Court can also consider new facts and inferences from them set forth by a plaintiff in her response brief even though not contained in the complaint so long as the new facts are consistent with the complaint's allegations. *Smith v. Dart,* 803 F.3d 304, 311 (7th Cir. 2015). But the Court may not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### BACKGROUND

Before describing the factual allegations that the Court will consider in evaluating whether Ms. Kamel has stated a claim under the ADA, the Court first addresses a dispute between the parties about whether the contents of certain documents may be considered. Anderson's description in its opening and reply briefs of the factual grounds underlying Ms. Kamel's ADA claim includes information gleaned from two documents connected to Ms. Kamel's arrest for off-duty behavior, an event that is central to the story told by the Complaint. The two documents are (1) a "pre-charging" document, [Filing No. 20-1 at 2], and a letter written by an attorney about the lack of formal charges being brought, [Filing No. 20-2 at 2]. Ms. Kamel's response brief asks the Court to "strike" this information and not consider it when evaluating the sufficiency of her Complaint, [Filing No. 15 at 11-12], and Anderson responds that the Court can consider the information because the Complaint actually references both documents and their content as part of the factual background for Ms. Kamel's claims. [Filing No. 20 at 12.] The Court agrees with Anderson that because Ms. Kamel's arrest and the circumstances surrounding her having been

"pre-charged" with crimes but criminal charges not having been brought are a central part of allegations connected with the termination of Ms. Kamel's employment and the veracity of Anderson's reason(s) for the termination, the Court can consider the contents of these documents without converting the motion to dismiss into one for summary judgment. *See McCready v. eBay, Inc.,* 453 F.3d 882, 891 (7th Cir. 2006) (court can consider the contents of documents referenced in a complaint and part of the plaintiff's claims; court can form its "own conclusions as to the proper construction and meaning to be given the material" in the context of a Rule 12(b)(6) motion.)

With the foregoing understanding, the Court takes as true at this time—as required by its standard of review under Rule 12(b)(6)—the following allegations contained in the Complaint, with some slight augmentation by allegations and explanations in Ms. Kamel's response brief, as well as the inferences from the documents submitted by Anderson.

Ms. Kamel is an Army veteran who suffers from post-traumatic stress disorder ("PTSD") stemming from trauma experienced while in the military. [Complaint, ¶ 5, Filing No. 1 at 2.] Her PTSD substantially limits one or more major life activities. *Id.,* ¶ 6. In conjunction with her employment, Ms. Kamel completed a Voluntary Self-Identification of Disability form, and thus Anderson knew about her PTSD, the "limitations experienced by [her] because of [her] PTSD," and the "triggers/events which can lead to manifestations of [her] PTSD." *Id.*, ¶¶ 8-10. Anderson hired Ms. Kamel to serve in an administrative capacity and not as a floor nurse because Anderson knew that Ms. Kamel's PTSD would be triggered by the floor nurse position. *Id.*, ¶ 12. Despite knowing that the demands of a floor nurse position may trigger her PTSD, Anderson moved Ms. Kamel to a floor nurse position at a later point in her employment. *Id.*, ¶ 12. Ms. Kamel also

3

suffered an injury while acting as a floor nurse and though she filed a worker's compensation claim, Anderson denied the claim. *Id.*, ¶ 13.

In mid-August 2020, Ms. Kamel was in a "social setting outside of work when her PTSD was again unexpectedly triggered." *Id.*, ¶ 14. She was arrested and "preliminarily charged with a criminal offense." [Filing No. 1 at 3; Complaint, ¶ 15.] She was "pre-charged" with public intoxication, "battery no inj-law enforcement officer," "resisting law enforcement: run from officer," and disorderly conduct. [Filing No. 20-1 at 2.] At some point, another Anderson employee told Anderson about the arrest, after which Anderson's human resources employee asked Ms. Kamel about the arrest. Ms. Kamel explained that there was a "relationship between the incident and her PTSD." [Filing No. 1 at 3, Complaint, ¶ 17.] Anderson immediately suspended her employment while it gathered more information. *Id.*, ¶ 18.

In mid-September 2020, Ms. Kamel provided Anderson with documentation that the prosecutor had determined not to file any charges because there was a connection between Ms. Kamel's PTSD and the conduct leading to her arrest and the "pre-charges." *Id.*, ¶ 19. The documentation is a letter from an attorney to Ms. Kamel explaining that (a) the prosecutor has not brought any charges, (b) no legal case has been filed with respect to the arrest, and (c) the prosecutor has "agreed to review the case and consider alternative options instead of felony charges," which will depend on Ms. Kamel's "successful participation in VA Services." [Filing No. 20-2 at 2.] After its receipt of this documentation, Anderson "requested a background check of Plaintiff" on September 18, 2020, and then terminated her employment on September 24, 2020. [Filing No. 1 at 3; Complaint, ¶¶ 20-21.]

Anderson orally told Ms. Kamel that she was being terminated because of the arrest and having been charged with a crime, even though Ms. Kamel had not been charged with a crime, as

Anderson well knew from the documentation she had provided in mid-September. *Id.,* ¶ 22. Anderson also orally told Ms. Kamel that being charged with a crime violated company policy, *id.,* but Ms. Kamel had not actually been charged with a crime (which Anderson knew). Ms. Anderson also notes that even if Anderson actually had a policy to fire employees who are charged with a crime, which Ms. Kamel challenges, [*Id.,* ¶ 22; Filing No. 15 at 10], Anderson has not applied that policy to non-disabled employees. [Filing No. 1 at 3; Complaint, ¶ 25.] Ms. Kamel also alleges that the formal written document Anderson gave to her about her employment termination stated that she was being terminated for "failure to comply with resident care plan transfer." *Id.,* ¶ 23. Ms. Kamel had never before received any warning or discipline from Anderson. *Id.,* ¶ 24.

As part of the Complaint's short-hand five paragraph description of her legal cause of action for Disability Discrimination (as opposed to the 23 preceding paragraphs listed under the title "Allegations of Fact"), the Complaint incorporates the previously described factual allegations by reference and states that (1) Ms. Kamel is disabled within the meaning of the ADA and Anderson knew of her disability, (2) she was qualified to perform her job for Anderson, (3) she "suffered an adverse employment action because of her disability," and (4) "[s]pecifically, Plaintiff was terminated because she was arrested – and not charged – due to an incident that was a manifestation of her disability." [Filing No. 1 at 4, Complaint, ¶¶ 29-33.]

### III.
### DISCUSSION

Anderson's motion to dismiss is based on the notion that Ms. Kamel has pleaded herself out of court. Anderson focuses nearly exclusively on two paragraphs of the Complaint (paragraphs 32 and 33) and reads them to allege that Ms. Kamel's disability caused her to engage in activity that violated a bona fide company policy applicable to all employees, and she was then fired for

5

violating the bona fide company policy. Anderson then relies on numerous cases ruling that an employer does not violate the ADA when it fires an employee for behavior that was caused by or was a consequence of the employee's disability when the behavior violated company policy. *See, e.g., Roberts v. City of Chicago,* 817 F.3d 561, 565-66 (7th Cir. 2016). [*See* Filing No. 12 at 7-12.]

Ms. Kamel responds that Anderson has read her Complaint in too crabbed a manner and has ignored numerous allegations. She states that her Complaint contains all necessary factual allegations and inferences therefrom to make plausible a claim for disability discrimination under the ADA. She also notes that Anderson's briefing relies heavily on summary judgment evidentiary standards that an ADA plaintiff must meet in showing that disputed material facts exist for a jury's decision, and such evidentiary standards are inappropriate on a motion to dismiss. [Filing No. 15 at 4-7.]

In reply, Anderson reiterates that Ms. Kamel pleaded herself out of court because she has not alleged that Anderson terminated her employment because of her disability, but has "directly alleged only lawful reasons for Anderson's decision to terminate her employment." Anderson also asks the Court to reject Ms. Kamel's "creative attempts to disguise her theory of the case in her Response." [Filing No. 20 at 13-14.]

### A. The ADA Prohibits Discrimination Based on Disability

As the parties agree, the outline of a claim under the ADA is straightforward. A plaintiff must allege factual content that directly alleges or creates an inference that she is a "qualified individual" with a disability (and the disability must be identified), can nevertheless perform the essential functions of her job with or without reasonable accommodation, and that she suffered an adverse employment action because of her disability. *See, e.g., Garrett v. Community Health*

*Network, Inc.,* 2017 WL 897310, at *3 (S.D. Ind. Mar. 7, 2017) (citing *Tate v. SCR Medical Transp.,* 809 F.3d 343, 344 (7th Cir. 2015)). Both parties also agree that Ms. Kamel has alleged sufficient factual content with respect to these facets of a plausible claim under the ADA *except* with respect to the last requirement. They disagree about whether the Complaint includes facts sufficient to plausibly allege that Ms. Kamel's disability was the reason Anderson terminated her employment or whether, instead, as Anderson claims, the Complaint includes facts that indisputably foreclose any notion that disability was the reason for the termination.

The Court will focus, like the parties, on whether there's enough in the Complaint to make plausible that Ms. Kamel was fired because of her disability. The Court must first comment, however, on Anderson's reliance in its briefing on summary judgment cases and the *McDonnell Douglas* burden-shifting framework for federal employment discrimination cases.

Anderson's opening brief in particular cites numerous cases that were decided on summary judgment. *E.g.*, *Raytheon Co. v. Hernandez,* 540 U.S. 44 (2003) (court was required on remand to determine whether factual issue prevented summary judgment on employer's theory that it did not discriminate because of the plaintiff's disability, but made its employment decision based on a policy neutrally applied to all employees); *Palmer v. Circuit Court of Cook County,* 117 F.3d 351, 352 (7th Cir. 1997) (employer was entitled to summary judgment; undisputed facts showed that it terminated the employee for threats she made to co-employees and not because she had a disability); *Williams v. United Ins. Co. America,* 253 F.3d 280, 282-83 (7th Cir. 2001) (employer demonstrated on summary judgment that it was not required to accommodate the plaintiff's disability by offering her a job for which she was not qualified); *Dalton v. Subaru-Isuzu Automotive, Inc.,* 141 F.3d 667, 679 (7th Cir. 1998) (employer entitled to summary judgment as to some plaintiffs but not others on issue about whether it had reasonably accommodated disabilities).

Despite Ms. Kamel's contention that summary judgment cases have no application here, it is not improper for a litigant (or the Court) to cite summary judgment cases in the Rule 12(b)(6) motion to dismiss context so long as the Rule 56 cases are being cited for legal principles that are not different in these two procedural contexts. For example, as the Seventh Circuit has noted, a court can use summary judgment cases as authority for its description of the basic outline of an employment discrimination claim. *Adams v. City of Indianapolis,* 742 F.3d 720, 728 (7th Cir. 2014) (not improper for district court to cite Rule 56 cases that outline a cause of action's basic elements; when ruling on motion to dismiss, the court has to determine whether the facts as alleged are enough to make plausible that the plaintiff may be able to show the defendant is liable for the wrong alleged). A problem arises, however, when a defendant uses Rule 56 cases as authority for the kind of evidentiary proof an employment discrimination plaintiff must muster in the Rule 56 context. *See Garrett,* 2017 WL 897310, at *3 (citing *Luevano v. Wal-Mart Stores, Inc.,* 722 F.3d 1014, 1028 (7th Cir. 2013)) ("direct and indirect methods of proof" in evaluating employment discrimination claims "are evidentiary standards that are not suitable at the motion to dismiss stage."). Some of Anderson's arguments about why Ms. Kamel has not stated a plausible ADA claim suffer from this problem. Anderson has couched many of its arguments in terms of whether Ms. Kamel's Complaint is consistent with the burden-shifting framework under *McDonnell Douglas* that a plaintiff can choose to use in defending against summary judgment. *See, e.g.,* [Filing No. 12 at 5-6 (arguing that a plaintiff like Ms. Kamel must recite direct evidence of discrimination or "establish a presumption of discrimination" by relying on the *McDonnell Douglas* framework)]; [Filing No. 12 at 10 (arguing that Anderson's alleged liability is "defeated" within the Complaint under *McDonnell Douglas* because the Complaint purports to allege that Anderson's actions were for "a legitimate, nondiscriminatory reason").]

This Court will not hold Ms. Kamel's Complaint to standards of proof that are applicable at later stages—Rule 56 and a trial, if necessary—but will not reject authority cited by Anderson solely on the ground that the authority is a Rule 56 case or discusses evidentiary burdens that may not be applicable in a Rule 12(b)(6) context.

The Court now returns to the meat of Anderson's motion and the parties' dispute about whether Ms. Kamel's Complaint plausibly alleges she was terminated because of her disability—as opposed to termination for behavior that may have been induced by her disability but which constitutes a legitimate ground for firing disabled and non-disabled employees alike.

### B.  Whether the Complaint Allows Inference of Termination Because of Disability

Anderson cites numerous cases—decided on motions to dismiss and on summary judgment—for the proposition that an employer can, without violating the ADA, terminate an employee for misconduct that may have been triggered or caused by a disability when it would otherwise terminate non-disabled employees for the same misconduct.  This legal principle is indeed supported by many of the cases Anderson relies on, and Ms. Kamel does not really challenge its existence.  The principle is described in various ways in the case law, such as:

- The plaintiffs allege that the prospective employer "failed to hire them not because of their disabilities, but rather due to the extensive medical requests that were a *consequence* of their disabilities. As we held in *Matthews,* [128 F.3d 1194 (7th Cir. 1997)], this is insufficient to demonstrate causation [under the ADA.]  Perhaps plaintiffs could have argued that these medical requests were in fact a pretext for intentional discrimination, but they made no effort to do so.  *Roberts v. City of Chicago,* 817 F.3d 561, 566 (7th Cir. 2016) (emphasis in original).

- The plaintiff does not "seriously dispute that the [employer] could have fired him for his drug use without running afoul of the ADA.  It is well-established that an employee can be terminated for violations of valid work rules that apply to all employees, even if the employee's violations occurred under the influence of a disability."  *Pernice v. City of Chicago,* 237 F.3d 783, 785 (7th Cir. 2001).

9

- An employer does not have to "give preferential treatment" to a disabled employee or waive the "normal requirements for the job." *Williams v. United Ins. Co. Amer.,* 253 F.3d 280, 282 (7th Cir. 2001).

The question at issue here—the answer to which determines whether Anderson's Motion to Dismiss should be granted or not—is whether Ms. Kamel's Complaint alleges disability discrimination by Anderson solely on the grounds that Anderson relied on behavior that Ms. Kamel engaged in as a result of her disability, which behavior violated generally-applicable work rules.

Ms. Kamel's Complaint alludes to such a theory in some places, but not throughout and not as a complete statement of the factual theories about why her termination violated the ADA. As Anderson contends, one could read Complaint paragraphs 32 and 33 as pleading the theory that Ms. Kamel's termination was unlawfully based on her disability solely because it was based on conduct that "was a manifestation of her disability." If these paragraphs were all there is, the Court would be inclined to find that Ms. Kamel has alleged that the termination was unlawful only because it was based on conduct—otherwise unacceptable to Anderson—that was caused by the disability itself. But Ms. Kamel has alleged more.

First, she has alleged facts suggesting that Anderson viewed her PTSD disability as causing an overall burden to Anderson. She alleged that (1) Anderson moved her to a floor nurse position despite agreeing when she was hired that an administrative position was appropriate because of her PTSD, which was likely to be triggered by the demands of a floor nurse position and (2) Anderson kept her in the floor nurse position even after she suffered an injury, although Anderson denied that the injury was work-related. [Complaint, ¶¶ 9-13; Filing No. 1 at 2.]

Second, her Complaint raises significant doubts about the existence of the purported company-wide policy, whose alleged violation purportedly led to her termination. The Complaint alleges that even though Anderson orally told her that her termination was due to its policy against

retaining employees who have been charged with a crime, (a) she had not actually been charged with a crime, and Anderson knew that at the time it terminated her, (b) non-disabled employees who had criminal charges actually filed against them were not terminated,[1] (c) Anderson provided a different story in written paperwork about why she had been terminated—allegedly not properly attending to a patient related matter, and (d) she had an unblemished work record before Anderson gave her the suspect reasons for her termination.  [Complaint, ¶¶ 22-25; Filing No. 1 at 3-4.]  These allegations make plausible that Ms. Kamel's employment was terminated because Anderson simply did not want to continue to employ a person with PTSD; her termination was "because" she suffered from PTSD.  It used Ms. Kamel's arrest as pretext justifying termination even though Anderson did not actually have the company-wide policy it said it had, did not apply the policy according to its alleged terms, and did not apply the alleged policy to non-disabled employees.

Third, the above-described inferences that can reasonably be made from reviewing the totality of the Complaint's allegations prevent the Court from accepting Anderson's argument that Ms. Kamel pleaded herself out of court because one reading of some allegations indicate that she is complaining that Anderson terminated her for engaging in behavior that was caused by PTSD—not that she was terminated because she is disabled by PTSD.  A court cannot find that a plaintiff pleaded herself out of court unless the facts in her complaint "establish an impenetrable defense to its claims."  *Tamayo v. Blagojevich,* 526 F.3d 1074, 1086 (7th Cir. 2008).  Pleading some facts

---

[1] The Court rejects Anderson's contention that the Court cannot consider Ms. Kamel's allegation that Anderson did not apply its alleged policy to non-disabled, similarly situated employees.  The allegation is not one of law or so conclusory that the Court is entitled to disregard it as an allegation of fact. The Seventh Circuit has been clear that a plaintiff asserting a cause of action for employment discrimination does not need to identify in a complaint similarly situated, otherwise known as "comparator," employees.  *Kaminski v. Elite Staffing, Inc.,* 23 F.4th 774, 777 (7th Cir. 2022) ("[A] plaintiff need not allege facts aligning with her claim's every element, which she will have to prove for her claim to survive summary judgment.  She certainly does not need to identify . . . a similarly situated employee who managed to avoid termination.").

that suggest an employer may have had legitimate grounds for its actions is not mutually exclusive with facts alleging illegitimate grounds. *Id.* (A defense has to be "impenetrable" under the complaint; whether a pleaded fact may ultimately make the plaintiff's ability to recover more difficult doesn't matter; the recovery only must be plausible under the complaint.).

The Court emphasizes too that Anderson's opening and reply briefs rely on its supposed company-wide policy to terminate employees because of criminal arrests or charges (whichever it is, if there is any policy as to either arrests or charges) as a rational basis for termination within the ranks of employees of skilled nursing facilities. But Ms. Kamel's Complaint does not establish that the policy actually exists, let alone the true contents of any such policy. Anderson states that the ADA allowed it to discipline Ms. Kamel for violating "a rule that applies to all employees." [Filing No. 12 at 8.] It states that as a skilled nursing facility, it has a "legal obligation to remain vigilant regarding any potential misconduct or criminal activity of its staff," [Filing No. 12 at 9], that "Plaintiff['s] behavior arguably threatened the safety of co-workers and Anderson's elderly and vulnerable residents," [Filing No. 20 at 5], and that "it would be reasonable for Anderson to conclude Plaintiff posed a legitimate threat to the safety" of co-workers and residents. [Filing No. 20 at 5.] These statements by which Anderson attempts to explain that it has (or may have) a company-wide policy regarding an employee's arrests, the bases for such a policy, and the ways in which it has been applied or might legitimately be applied in the work setting are defenses at best. Ms. Kamel's Complaint does not establish any of these matters as ones of fact on which her case rests. The parties will have the opportunity in discovery to determine whether Anderson has a company-wide policy anything like what it allegedly described to Ms. Kamel when she was terminated or anything like what it purports to describe in seeking to dismiss Ms. Kamel's Complaint.

This case is unlike Anderson's principal case, *Pernice v. City of Chicago,* 237 F.3d 783 (7th Cir. 2001). Mr. Pernice was fired after he was arrested while off duty for disorderly conduct and cocaine possession, and he sued his employer for violating the ADA. The district court determined that the theory of Mr. Pernice's complaint and amended complaints was that his disability had caused him to engage in the off-duty behavior and it was improper for his employer to fire him for disability-induced behavior. The district court had given Mr. Pernice three chances to submit a viable complaint, but each time he alleged that the behavior on which the employer relied to terminate him was created by the disability itself and by taking employment action based on the "criminal misconduct" he engaged in, the employer had necessarily terminated him because of his disability. *Id.* at 786. On appeal, Mr. Pernice sought to change the theory of his complaint and contend that the reason for his termination was his decision to seek—and successfully complete—drug treatment (a reason that penalized him for having had a disability) not the fact that he had possessed drugs and been charged with that crime, which he now contended was only a pretextual reason (a phony one) given by the employer to justify termination. The Seventh Circuit refused to consider the new theory, finding it having been dreamt up by Mr. Pernice at a late date on appeal after he lost in the district court on his first theory—and the one that was more probable. *Id.* at 787 ("We will not subject the [employer] to the expense of discovery on a theory that could likely be the subject of a successful Rule 11 motion.").

In short, Ms. Kamel's Complaint does not inexorably establish an impenetrable defense. It does not concede that Anderson merely applied a standard work rule applicable to all employees as the grounds for her termination. While Ms. Kamel's Complaint pleads with certainty that absent her PTSD, she would not have engaged in the behavior that led to her arrest, her Complaint

13

reasonably may be read to allege that Anderson used the arrest as a mere pretext to rid itself of an employee with PTSD, and there was no policy justifying her termination.

## IV.
## CONCLUSION

For the foregoing reasons, Defendant Anderson's Motion to Dismiss, [11], is **DENIED.**

Date: 1/25/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**